Good morning, counsel, whenever you're ready. Yes, your honor. Good morning. I will not review the facts of the case unless the judges have any particular questions. Can you speak up, counsel? Yes, let me get a little bit closer and turn up my speaker. All right. I won't review the facts of the case unless the judges have questions on it. A couple weeks ago, your honor, the Board of Immigration Appeals came out with a new decision. Madeline Wilson, this is Morales, decided May the 5th. The government has provided a supplemental authority to the court a couple days ago, I think, under the rule 28J. And I think it's very dispositive of my particular case that's in front of the judges now. It talks about the equitable tolling, the concept of equitable tolling, which is a little new to them because in their timely filing of notices of appeals, they were more restrictive on the jurisdictional issue. But under, I think, ACFR 1003.38, they discussed the claim processing rule. And I think it's a reflection of the board loosening up a little bit on the strict jurisdictional binding. Now, in that particular case, I think it's very binding on what we're talking about here today because they mentioned an example of extraordinary circumstances which prevent the filing of a notice of appeal to the issue in my case. And they also discussed due diligence. But on that equitable tolling extraordinary circumstances example, they use the same exact example that I had in my case. And that was I utilized Federal Express, a guaranteed delivery service, to go ahead and deliver the notice of appeal to the board. The problem here is not so much that part of it. I mean, what the BIA focused on was not that FedEx went awry. I think they seem to accept that that would have gotten you some additional time. The problem is that it took so long to figure out that FedEx had screwed up. The thing was mailed on January 31st. It was due on February 21st. The board sends out confirmations of receipt. And it's in July that it's first discovered that the you know, five months earlier. Yes, Your Honor. I had no reason to believe that it would not be delivered. Having used Federal Express a thousand times in the past, never had any problem. So I had anticipated that it would be delivered. FedEx does not have a program where they will contact and let you know that it wasn't delivered. If it is not delivered, it isn't delivered. They will not contact us, but no. But the board's point is that the board sends confirmation of receipt. And the failure to get the confirmation of receipt should have been a flag that, in some period less than five months, should have triggered an inquiry. In a perfect world, I agree with you, Your Honor. But that COVID-19 global pandemic was very difficult on not only ourselves, but all government aides. I mean, I would have more force if the due date had been March 21st. But the due date was February 21st, which was about a month before the tsunami hit. And so, you know, why is a review of the board's decision as deferential? So why is it something that we can reverse or do grant relief on? Well, because I think their analysis of my case under their perception of late filing has been changed to their equitable tolling. I think if they were to review my case again under a different standard, which they should, then I think they might come up with a different result. So it's a legal error, in my opinion, for them to not consider my case under their new standard, their equitable tolling. So had they looked at my case under today's condition and their analysis of Maddow-Wilson, I think they would come up with a different response. I think they would be a little bit more lenient in terms of the extraordinary circumstance and my due diligence. Now, Your Honor, when they talk about equitable tolling, they say that there should be due diligence in filing the notice of appeal. I filed that notice of appeal within days of the hearing. Now, I understand that they followed up on that. But if you look at the board practice manual in the 3.1, they take a look at what is a timely filing, and they want you to file as quickly as you can. I did that. And then there's also under 3.1b, subsection 6, there's a man-made and natural disasters. They recognize that there are extraordinary circumstances sometimes when things can't be done. And I believe that if they were to take a look at this case again on remand, I think it would be dispositive of perhaps making a different treatment than they did before. And I think that's the importance of this new case, is I think they've loosened up on their analysis of these late filings. And it's important that I think that the panel should be managed and let the board take a look at this again under equitable tolling analysis. Now, there's their big question about due diligence. In the board decision, they said, counsel, why were you late? And basically, what happened, Your Honor, is I got a call from an ICE agent in July. And ICE has a policy here of following cases that have gone into the court proceeding or denied. So, they called me, ICE agents know me, they called me and said, Marshall, what happened to the notice of appeal? We don't see it. And I said, well, I filed a notice of appeal. Well, we don't have it. At that point, I contacted the board. Yes, in a perfect world, I should have probably contacted the board earlier. But we had some restrictions. Our office was closed down, we were furloughed. That's all explained in my affidavit. It was a rare, extraordinary circumstance of that pandemic. Yes, I would have liked to have followed up on every single notice of appeal. But I was restricted in doing so. Sometimes our office was even closed. We were looking in and servicing people we could service. I'm not making excuses, Your Honor. I'm just saying that I think the board now with a new case gives an opportunity to take a look at a more relaxed standard. And I think if this case were to be remanded back to them, I would assume that they would take a look at this under the equitable polling standard, not so much the jurisdictional standards. So, that was my reason for not checking on it earlier. I should have, but I just didn't have the opportunity to do so. I might add, Your Honor, that during that timeframe, the Board of Immigration Appeals was also working under restricted conditions. Sometimes we didn't get notices, sometimes we didn't get calls, sometimes we didn't get notification of certain things. So, I'm not going to blame them for it. It's just the way it was. It reduced staff at the typical times during that time period. So, we did the best we could under those circumstances. Where is the Board of Immigration Appeals located? Is it in Washington? Falls Church, Virginia, Your Honor. Pardon me, Falls Church. And were they working during the pandemic? I'm talking about 2020. My framework for the pandemic is March 8, but I won't quarrel with February. But were they actually working? And who was opening the mail? My understanding was that, you know, I suppose being in Brooklyn, we look with contempt on Washington, but we were of the view that nobody was working from their office in Washington. They were open, Your Honor. As far as I know, they were still accepting notices. But it was a reduced staff and certainly furloughs like we did in private business. And there were times when we would wait weeks, if not months, to get some kind of a notification. We would call them on occasion, but they got irritated because imagine all these attorneys calling and trying to figure out what's going on with their notices. So, sometimes they would lose our notices. Sometimes their system would show that they received notices and received briefs, but they couldn't find them. So, they'd ask for copies of them again. So, you know, they were struggling with it also. And I don't know if I had checked on it, they would have been able to get back to me in a timely manner anyway. I'm just saying that those were rough times during that time. And I think the board now with this new decision recognizes under equitable tolling that there are from filing in a timely manner. Did you want to save the remainder of your time, counsel? Yes, ma'am. May it please the court, Your Honor. Joanna Watson on behalf of the respondent and United States Attorney General. Morales, Morales really hasn't changed anything in respect here because the board, while they overturned Leodov and now in line with this court held the 30 days of claim processing subject to equitable tolling. As I argued in the brief, the board based it on Holland, which requires an extraordinary circumstance in addition to showing that you acted with due diligence. And the board here addressed due diligence. So, you need both of those in order to have a successful equitable tolling argument. And that's not happened here. Not respecting in the certification of the motion to certify the appeal, you know, all he said was FedEx picked it up and it never got delivered. And I inquired almost six months later. The board, you know, didn't, pardon me? But one of the troubling things about this case is that this particular FedEx package had papers for three different aliens that the same law firm was representing. And this one got the boom lowered on it. And one of the other ones gets a pass, exactly the opposite conclusion. The facts are identical. They're the same. It's the same package. And the board just says, well, precedent, you know, it's an unpublished decision and it's not precedential. So, we're allowed to say you win, you lose. It seems completely arbitrary. How can we uphold decision making where it's just thumbs up for one, thumbs down for another, and there's no rational distinction between them? Well, I mean, that goes to the certification, which is generally unreviewable absent a legal or constitutional claim, which hasn't been present here. And if you look at that other filing that was in there, he filed, looked into it a whole month prior that you see from the decision. But yet, it took another month for this one to be filed. Say that again, counsel. I didn't hear you. The interim decision that he relied on that had one of the, the appeal package, the FedEx package, supposedly had three appeals in it. And the board granted the appeal, the late appeal in one of them. But that filing was done a month before. So, it's interesting that in this case, he didn't inquire. The same package until July. Excuse me, I can't hear you. Oh, I apologize, Your Honor. Which filing? Try to speak louder. They were all filed at the same time. Yeah, the FedEx package had three appeals in it. Right, and you got them. Pardon me? And you got them. You got them. The BIA got them. Well, because he filed them late. But I'm talking about the one where the board reopened that was supposedly in the original package mailed on January 31st. He filed the motion to accept it late a month before he did in this case, even though it was in the same package. I'm still trying to understand how well. And he showed a FedEx receipt for this one that he didn't inquire until July 15th on this appeal. But yet he had already filed a motion with the board in another case that was in that same. But he claims now that on July 15th, he realized that the package hadn't been delivered and he inquired with FedEx on July 21st, I believe. But yet it shows in that interim decision that in that particular case, I believe it was in June, a month before. You're saying that the distinction and the justification for why the board said yes to one and not the other is the other one was a full month earlier in terms of the inquiry being made. I'm not saying that. The board didn't say that. I'm just saying that could have been. Maybe the board's getting a lot of these and it's not enough to just say, it's late. Sorry. We thought FedEx got it, especially in this situation where the pandemic didn't officially start for six weeks. And the appeal was due February 21st, I believe. I mean, you could have checked the tracking number with FedEx. You could have gone online and checked. Do we look at the fact that the other case was filed a month earlier in assessing the due diligence analysis when the BIA did not cite that or lie on that? No, but it's, you know, could be worthy of a footnote and a brief. It's just something that's also out there and interesting that in this case, he didn't inquire with FedEx until July. But yet that other appeal that was in the same package was inquired in June. Can I ask you, I'm having trouble hearing. I understand what you just said. I'm just having trouble hearing. You said when the BIA began to function or words to that effect, when did they begin to function normally? To be perfectly honest, I mean, the pandemic, things weren't, they evolved pretty quickly. I mean, I was home for two years and not going into the office and we managed to get everything done. Thank goodness. I mean, it was pretty amazing. But everything evolved that you found ways to get things done, even though you were working from home and doing things electronically. No, that's a different story. This deals with the receipt of mail. And who is there to receive the mail? Even in the one case where the June 1st, there was a June, the one that you actually got. There were limited staff. That's a long time from when he mailed it. Why when he mailed it, in effect on time, and why didn't the board and the board got it at some point? Why did one person get notified in June and the board essentially accepted it? And one was, why was that? Why did it take until June when he mailed it in February? Why? I'm not sure I'm understanding. Why did what take until June? Well, there was one of the three. Maybe I'm confused, but one of the three was in June and then he filed in July. He filed a motion to accept the late appeal in another case that was in that FedEx package in June. In June. But in this case, an appeal that was also in the same package, he filed a motion asking the board to accept it late a month later. So what you're saying is the package that was sent in January was never received at all. It just disappeared and no one knows where it ever went. And that's what it appears. And then there were inquiries made affirmatively from counsel in June, and discovered the error and then presented a late appeal. And then the similar thing in July for the other case. Do I have that correct? Correct. Okay. Correct. Can I ask you? Go ahead. I had another question. No, pardon me. Go ahead. There's one of our cases, Irigoyen versus Briones. The court noted that an appellant who has deposited his notice of appeal to the BIA for the postal service or an approved carrier the day before it is due, the guaranteed next day delivery has done all that reasonable diligence requires. But we're talking about here from an equitable polling standpoint, you have to have that extraordinary circumstance as well as due diligence. So, you have to have both. If you don't have the due diligence, which the board found here, then equitable tolling does not apply. And then in that case, that all came down to, it was remanded because the board said that it didn't have authority to accept it late. And there was another similar case, and that was the same situation there. Here, the board hasn't said it didn't have an authority to accept it late. They just chose not to because of the diligence. And then getting to the motion to reconsider, a motion to reconsider isn't an opportunity to beef up the original facts. You're supposed to show a legal or factual error in the prior decision, and he simply hasn't shown that in regards to the motion to reconsider. And the board actually gave the benefit of the doubt because they did consider the additional facts that their law firm had less staff and different things from the pandemic and found that it still didn't explain why he waited almost six months in order to check on this appeal. But he hasn't shown, you know, he's presented additional facts, but he hasn't shown the necessary legal or factual error in the board's original decision. Because in that original motion, all he did was say it was picked up by FedEx, and I didn't realize it until almost six months later. So, please accept it. All right. Thank you very much, counsel. Okay. Thank you. Mr. Whitehead. Yes, ma'am. Thank you. On the June one, just a clarification, I received a call from another ICE agent on another, that first case in June. And as soon as I got that call from the ICE agent, I checked again with the board and found that it hadn't been approved. That was the difference between the June and July. I think government is trying to say that someone- But once you discovered in June, in that case, that that package had gone awry, that puts you on notice that everything else in the package had gone awry, and yet nothing was done in the other cases in the same package. That's assuming that I would have known that. Staff, when we're doing lots of appeals, multiple appeals, staff will go ahead and sometimes, instead of doing one package in an envelope, they'll maybe have three or four appeals in the same envelope. So, when that was sent in, then, you know, they were all treated the same way. When I found out about the June one from the ICE phone call, there was no connection between, you know, case number A, case number B, or case number C. There's no connection to that. The staff would have- What you're saying, counsel, is that when you got that call in June and acted on that other case, you didn't realize that these cases were in the same lost package. But wouldn't that trigger knowledge that there's an issue with regard to FedEx delivery and that you should follow up to figure out what cases the office is handling that hadn't received a notice of acknowledgment of the receipt of the notice of appeal? One would think that you would then review all of the cases, all of the due dates for the appeals, and figure out which one was delivered by FedEx and which one was missing. I agree with you, again, in a perfect world, but during that time frame, when we had problems starting in January and February with the pandemic, and I had a reduced staff, and I myself was off for a time period. So, yes, in hindsight, yes, I should have gone back and checked on all that. But I didn't have the staff. I didn't have the time. We were lucky to keep our doors open to service anybody at that point. So, with a pandemic alone that we got, we were able to keep going. But it was a very long time that we could have checked on every single one of those cases. But again, I get back to this Wilson case and the Morales case. And it seems to be that the board is saying, look, we understand now that there are due diligence and extraordinary circumstances problems with filing timely appeals. We understand that. And given the set of circumstances that was in this case, which is this exact same as mine, that we would have considered this as perhaps a rare and extraordinary circumstance and accepted as a timely matter. The second point, real quickly, and that is, it's very irritating. And then I think one of the judges mentioned very irritating to counsel and the public to know that it's just a random act of one board member will look at my argument and feel that it was completely acceptable and I made the due diligence and understood the global pandemic ramifications. And the judge right down the hall or the panel member down the hall says, no, I don't think it's good enough. And so, I think it's just unequal treatment of these. And where do we stand? Where's the discretionary standard? Where's the due diligence standard? How are we supposed to deal with this when board members just randomly and willy-nilly just make decisions, however they feel like it? And I think that unequal treatment rises to a legal error. I think it should be remanded. I think the board should take a look at it under the equitable standard. All right. Thank you very much, counsel, for your argument today. The matter is submitted.
judges: NGUYEN, COLLINS, Korman